McBROOM et al. v. S. E. GREYHOUND LINES et al.—
193 S. W. (2d) 92.

Eastern Section.   June 28, 1945.

Petition for Certiorari denied by Supreme Court, December 8, 1945.

14

Charles A. Noone and Wood & Dietzen, all of Chattanooga, for plaintiffs in error.

C. G. Milligon and Charles D. Goins, both of Chattanooga, and Hodges & Doughty, of Knoxville, for defendants in error.

HALE, J. The plaintiffs below prosecute this appeal from the action of the trial judge in granting peremptory instruction at the close of their proof.

Mrs. McBroom's suit was based on personal injuries she sustained, while that of her husband was for loss of services, medical bills, etc.

The Southeastern Greyhound Lines is a common carrier of passengers. The defendants Kirk own and operate the Peggy Ann Cafe at Rockwood, Tenn. This is a regular "Rest Stop" for the Greyhound Lines and is so advertised as shown by Exhibit "B" to Scott McBroom's testi-

mony. It seems that this arrangement is mutually satisfactory to the carrier and cafe owners. The carrier is benefited by the rest room and toilet facilities afforded their passengers, who also might purchase refreshments, food, etc. It is a fair inference that such facilities are essential to the proper operation of a motor carrier of passengers. The Peggy Ann Cafe profited by the patronage of the passengers. It is shown that their place of business is about a mile south of Rockwood and we think it a fair inference that a considerable part of their patronage is derived from bus passengers.

Mrs. McBroom's claim is based on this allegation:

"On or about the 22nd day of November, 1943, the plaintiff herein boarded one of the buses operated by the defendant corporation at Cincinnati, Ohio and became a regular passenger for hire for the purpose of traveling to Chattanooga, Tennessee by way of Lexington, Kentucky and Rockwood, Tennessee. In the evening of said day, the bus on which plaintiff was riding reached the town of Rockwood, Tennessee, and as was customary, the operator of the said bus drove same to the Peggy Ann Hotel Cafe, and stopped announcing that there would be a layover there for sometime, ordering the passengers to leave the bus, suggesting that they avail themselves to the aforementioned service therein furnished. Thereupon, this plaintiff and all other passengers alighted from the bus at which time the lights on same were extinguished and the doors shut. The plaintiff went to the rest room on these premises, but returned shortly thereafter to the vicinity where the bus was parked for the purpose of getting on same. That portion of the premises where the bus was standing was very dark: there being almost an entire absence of light. In attempting to make her way back to the bus from the inside of the building, and due to the

darkened condition there existing, plaintiff was unable to, and did not see, a projection that extended of uneven width out from the lines of the walkway in front of the door to the cafe, and as she started to step down to a point where she thought, and had a right to believe, that there was a step-off, she caught her foot on the edge of the projection and fell to the hard driveway, striking same with great force and violence. . . . . .

"Plaintiff avers and charges that she was a paid passenger on said bus, and both while she was actually riding thereon and while she was on the aforesaid premises at the instance and direction of the defendant corporation, its agents and servants, she was entitled to expect, and the corporation was required to exercise the highest degree of care for her own safety and welfare. Nevertheless, and entirely unmindful of its duty on its part, said defendant corporation, through its agents and servants, negligently directed and ordered the plaintiff to get off of the bus upon these premises at a time and place when same was in a negligent and hazardous condition. By reason of the darkened condition of the premises and the dangerous and defective condition of the walkway above referred to, said defendant, could and should have known, by the exercise of the high degree of care which they owed plaintiff; that this defendant was further negligent in not causing the plaintiff to be warned of said negligent condition and in cutting off all the lights after she had alighted, thus adding to the darkened condition of the premises, and said defendant corporation, its agents and servants were further negligent in failing to furnish the plaintiff a means or method of egress and ingress from the said bus that was in a safe condition, free from the hazard of poor illumination, defective lighting and negligent construction of the step-off above referred to.

"The defendants Kirk, and each of them, being engaged in the business of operating a public restaurant and accompanying rest rooms for the general public and especially for the passengers arriving on buses operated by the defendant corporation, owed this plaintiff the duty to exercise care and prudence for her safety and welfare; but entirely unmindful of this duty, they were guilty of negligence, in that they were operating and maintaining said premises in a defective and dangerous condition when they knew, or by the exercise of due care, could and should have known that the lighting in the area where the bus was parked was inadequate, especially in the area of the driveway and the walkway adjoining, and they were further negligent in maintaining the premises in a poorly lighted condition and with the irregular and protruding walkway in front of the door above referred to and at a place due to the darkened condition said defects could not be observed by the public or this plaintiff.

Plaintiff avers and charges that the independent acts of negligence on the part of the agents and servants of the defendant corporation, combined and concurred with the negligent acts of the defendants Kirk, their agents and servants; thereby producing and causing the accident above referred to and her resulting injuries and that said negligent acts so combined and so concurring were the direct and proximate cause of said accident and her resulting injuries."

This cafe building is on the west side of the highway. It is about 28 feet in width, and has in front of it a walk 4 feet wide, which is 8 inches above the driveway. On the night in question this walk was partially obstructed with benches and scales. In front of the building and covering both the walk and drive is a marquee. The principal entrance to the cafe seems to have been a door about the

center of the building. Immediately in front of this door there had been added to the walk what we, for the lack of a better name, will call a "buffer" composed of concrete and semi-circular in form, and the same height of the walk. This is well known in Exhibit "A" to Scott Mc-Broom, which indicates that it was not of the same color as the walk. It may have been painted. This projection was about 12 or 14 inches at its broadest point. It was built to keep busses from striking an overhead fan immediately above the door.

Mrs. McBroom became a passenger of this carrier at Cincinnati. She changed at Lexington, Ky., and from there to Rockwood had been out of the bus only once. It was at night. She was wholly unfamiliar with this situation at the Peggy Ann Cafe. She and the other passengers were ordered off the bus. The bus was parked at an angle but sufficiently close to the walk as to allow her to step from the bus to the walk. She then proceeded northwardly up the walk to the main entrance, went in and entered the lavatory, came back out and purchased a cup of coffee and a sandwich and then went back outside. The lights were off of the bus, the venetian blinds on the door and windows of the cafe were down, and at the north and south ends of the marquee there were three or four small 25 watt lights which were encrusted with dust and cobwebs and were not sufficient to illuminate the entrance of the cafe, or to show this semi-circular "buffer". Plaintiff having finished her refreshments left the restaurant. There was another woman passenger immediately ahead of her. As they went out of the door something was said about how dark it was and this other passenger stepped down from the walk to the driveway, to walk up to the front of the bus. Mrs. McBroom undertook to do the same and caught her heel on this "buffer" throwing her down

and causing her to sustain serious injuries. She had observed the outline of the walk but not the projection. There was a pocket of darkness there and she was evidently relying upon the fact that her co-passenger had stepped down safely.

The learned Ciruit Judge was of the opinion that neither of the defendants was guilty of negligence, and, further, that the plaintiff in stepping off in this unlighted area was guilty of such negligence as would as a matter of law bar a recovery.

In passing upon the question we must remember that the case should not have been taken from the jury unless reasonable men, acting as triers of the fact, could not differ as to the conclusions or inferences to be drawn therefrom. Moody v. Gulf Refining Co. 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243; Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197; Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 118 S. W. (2d) 213.

Before undertaking to draw these inferences, let us see just what duty the carrier was under towards its passengers. We think this stop to attend to body function and to obtain food was an essential and indispensable incident to the transportation of passengers. Mrs. Mc-Broom says they were ordered to get out of the bus by the driver. The passengers got out and the lights were turned off. Was her status such that she was entitled to the highest degree of care? Or was it such as to entitle her to only ordinary care? We think she retained the status of a passenger and entitled to have her rights and liabilities measured as such. Certainly, this conclusion is supported by reason. Busses do not have sanitary facilities. They do not have a "diner" or a "butch" to vend food and refreshments. It is not reasonable to say to a passenger, "When you are required to get out of a bus at a place

selected by us, in order for you to do certain things that are essential to your travel on our conveyance and therefore essential to our continuing in the transportation industry, you then lose your status as a passenger and become at most an invitee and entitled to receive only ordinary care."

"A carrier of passengers is not an insurer of the safety of its passengers, but it is held to the exercise of the highest degree of care and foresight for the passenger's safety." Knoxville Cab Co. v. Miller, 176 Tenn. 88, 12 Beeler 88, 138 S. W. (2d) 428, 429. We think this applies to the selection and use of suitable facilities at rest stops as well as to carriages, motive power, appliances and servants. In modern motor transportation a safe rest stop is just as essential as a safe vehicle.

In 13 C. J. S., Carriers, sec. 566 b, pages 1075, 1076, it is said: "As a general rule, as stated in Corpus Juris, which statement has been approved by subsequent decision, a passenger does not lose his character as such by merely temporarily alighting at an intermediate station, with the express or implied consent of the carrier, for any reasonable and usual purpose, such as the procuring of refreshments, the sending or the receiving of telegrams, or for the purpose of exercising by walking up and down the platform, or for relief from fatigue of travel, or even from motives of curiosity. This is an absolute right of the passenger, so long as his object in alighting is not inconsistent with his character as passenger; and it is not dependant on notice being given to the conductor of his desire to alight."

And in Goodman v. Queen City Lines, 208 N. C. 323, 180 S. E. 661, it was held that a passenger of a bus who got off at an intermediate station for the purpose of using the rest room and toilet facilities did not lose his status as a passenger on the bus line.

In 10 Am. Jur. "Carriers", Sec. 1012, p. 58, it is said: "The passenger, without losing his rights while he is in those places to which the carrier's care should extend, may do whatever is naturally and ordinarily incidental to his passage. There are no fixed or arbitrary rules to determine what is, or what is not, reasonable in this respect. If there are telegraph offices at stations along a railroad, and the carrier furnishes in its care blanks upon which to write telegraphic messages and stops its trains at stations long enough to enable passengers conveniently to send such messages, a purchaser of a ticket over the railroad has a right to suppose that his contract permits him to leave his car at a station for the purpose of sending a telegraphic message. Whether the passenger alights for his own convenience from motives of either business or curiosity, or to obtain exercise at any regular stopping place for passengers, is immaterial in this respect provided that he properly regards all the carrier's rules and regulations and that his doing so does not interfere with the carrier in the performance of its duties."

The plaintiff is 57 years of age, about five feet five and one-half inches in height, and weighing one hundred seventy-eight pounds. She uses bifocal glasses which were worn at the time of the accident.

People of that age and physical characteristics are not endowed with the agility and keen vision of youth. The thing that might be avoided by a young person might become a veritable snare or trap for the middle aged or elderly. There is no suggestion that it is uncommon for a person with the physical attributes of the plaintiff to become a passenger.

Is the carrier using the highest degree of care and foresight for the safety of such a passenger when it furnishes (and in the instant case, required the use of)

facilities which are so poorly lighted as to fail to disclose a projection that might cause a female passenger of the age and physical characteristics of the plaintiff to stumble and fall? Is the only inference to be drawn from all of the evidence that this was a safe place? Suppose that, instead of there being a projection, there had been a recess into the sidewalk, would this have been a safe place? Is a projection beyond the curb line any less calculated to cause a person to stumble and fall than a recess cut into the walk? Would a carrier using the highest degree of foresight and care have properly illuminated this potential stumbling block?

While we do not say the jury should conclude that negligence is shown, we believe that it might conclude there was negligence on the part of the carrier in selecting and adopting these unlighted premises and that the owners were negligent in so maintaining them. The projection itself was not unlawful, but when it was poorly illuminated it might (and did) cause a serious accident to a person who had every right to presume the premises were safe. And while we are on this, suppose there had been an unlighted obstruction on the top of the walk and that this had caused the plaintiff to fall, could it be said the only inference to be drawn would be that defendants were free from negligence? Could it not be anticipated that a person leaving the cafe would undertake to step down to the driveway to walk to the front of the bus? Was there any sign that this semi-obstructed sidewalk was the only means to be used? Had not another passenger immediately ahead of plaintiff done so without untoward event? Plaintiff had seen the outline of the walk but not the projection. Was she negligent in leaving the cafe when she did? We assume that the passengers would filter out as their needs were satisfied. While the driver

of the bus had not given the order for the passengers to re-embark, there is no evidence of such a rule in existence or known to plaintiff. Others (at least the woman immediately ahead of her) were leaving. We think it was most human and therefore within the realm of foresight to anticipate that the passengers would go out for a breath of air or to stretch their legs or to wait for the bus to be reopened.

We cannot say that the only conclusion to be drawn is that the plaintiff was guilty of such negligence as would bar a recovery. She did not know the premises. She had noticed the curb line but not the projection. Must a person look to see that every step will be safe? If so, there would never be a recovery for slipping and falling. What we have said with reference to the alleged negligence of the defendants presenting a jury question applies with equal degree to the alleged negligence of the plaintiff. If guilty of negligence was it the remote or proximate cause of the accident?

We think the case of Spilman v. Staley[1] (Supreme Court, unpublished) and Loewe's Nashville & Knoxville Corporation v. Durrett, 18 Tenn. App. 489, 79 S. W. (2d) 598, 606, are to be distinguished from the case at bar for the reason that the injured persons in those cases were chargeable with knowledge of the conditions complained of. In the latter case it is said, ''An invitee may rely upon the safety of the premises, if he is not aware of the danger . . . or there is no reason to apprehend danger.''

In our judgment the plaintiff had the right to go to the jury as to both defendants. Reversed and remanded at cost of defendants in error.

Burnett and McAmis, JJ., concur.

---

[1]No opinion for publication.