ALMA TSCHUMI, Appellant, v. KIRBY LEE BRAD-
LEY, d/b/a PADDOCK CAFE, Appellee.
—296 S. W. (2d) 885.

Western Section.    August 23, 1956.

Petition for Certiorari denied by Supreme Court December 7, 1956.

Martin & Tate, George E. Morrow, and W. Emmett Marston, Memphis, for appellant.

W. Edward Quick, of Quick, Buchignani & Greener, and Freeman C. Marr, Memphis, for appellee.

BEJACH, J. This cause involves an appeal by Miss Alma Tschumi, who was plaintiff in the lower court, from a judgment of the Circuit Court of Shelby County, wherein the trial judge granted a directed verdict against the plaintiff and in favor of the defendant, Kirby Lee Bradley, d/b/a Paddock Cafe. For convenience, the parties will be styled as in the lower court, plaintiff and defendant.

Plaintiff, Alma Tschumi, sued the defendant, Kirby Lee Bradley, individually and doing business as the Paddock Cafe, seeking to recover damages for serious and permanent personal injuries sustained when plaintiff slipped and fell upon a deposit of garbage which it was alleged had been deposited by defendant and allowed by him to remain on the public sidewalk just outside the kitchen door of his restaurant. Plaintiff's declaration is in three counts. Count I alleges common law negligence consisting of charges that defendant deposited or allowed to remain deposited outside the kitchen door of his restaurant on an alley which was frequented by numerous pedestrians, certain garbage or refuse from his kitchen. Count II reiterates the same charge, with the additional

charge that it was gross negligence on the part of defendant to have allowed the garbage so deposited outside of his kitchen to have so remained after it had been rained on and become sodden with moisture. Count III of the declaration charges violation of a City Ordinance which prohibits the placing of or allowing to remain, any trash, rubbish or other objects, whether it amounts to an obstruction or not, or permitting any such rubbish to be thrown by others, or to remain in front of one's house or place of business, in any street, alley, public park, square, or place of the city.

The defendant filed pleas of the general issue and contributory negligence, but upon order of the Court requiring it so to do, filed special pleas denying virtually every allegation of plaintiff's declaration, denying negligence on the part of defendant and alleging contributory negligence on the part of plaintiff.

The cause was tried before a jury. At the conclusion of the plaintiff's proof, and again at the conclusion of all of the proof, the defendant made a motion for a directed verdict, which motions were overruled, and the cause was submitted to the jury. The jury was unable to agree, however, and a mistrial was entered.

On motion for a new trial made by the defendant, the trial judge granted the defendant's motion for a new trial, sustained the defendant's motion for a directed verdict, and dismissed plaintiff's suit. Plaintiff, thereafter, made a motion for a new trial which was overruled, and an appeal in the nature of writ of error was perfected to this Court.

The plaintiff as appellant in this Court has filed two assignments of error, which are as follows:

## "Assignment I

"The learned trial Court erred in sustaining the defendant's motion for a new trial and for directed verdict.

## "Assignment II

"The learned trial Court erred in denying the motion of plaintiff made after the order referred to an Assignment I above, to set aside the said order and grant plaintiff a new trial."

These assignments of error present a single question to this Court, viz, whether or not the trial judge was correct in his ruling which granted defendant's motion for a directed verdict. The record does not show on what grounds the trial judge sustained defendant's motion for a new trial and for a directed verict. The Court stated merely that the Court should have sustained defendant's earlier motion for a directed verdict.

The trial judge's ruling and the plaintiff's assignments of error, as appellant in this Court, require an examination by this Court of the evidence adduced in the lower court, for the purpose of determining whether there was any evidence tending to show negligence of the defendant which proximately caused plaintiff's injuries, and, also, whether plaintiff was guilty of contributory negligence which, as a matter of law, bars her right of action.

In making such examination of the evidence, however, this Court must bear in mind that in doing so it must take the view of such evidence which is most favorable to

the plaintiff. This rule was ably expressed by Felts, J. in the case of Lackey v. Metropolitan Life Insurance Co., 30 Tenn. App. 390, 397-398, 206 S. W. (2d) 806, 810, as follows:

"(1) In view of much of the argument in the briefs, it seems well to recall the rule, so often stated in numerous cases, by which both trial courts and appellate courts must be governed in determining a motion for a directed verdict. That rule is based on the constitutional right of trial by jury; and it has been fashioned so as to preserve that right and at the same time to administer the common law separation of function by which the jury try the facts and the judge the law. 'There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence, or any legal doubt as to the conclusions to be drawn from the whole evidence, upon the issues to be tried.' Tyrus v. [Kansas City, Ft. S. & M.] Railroad Co., 114 Tenn. 579, 594, 86 S. W. 1074, 1077; Brenizer v. Nashville, C. & St. L. Ry., 156 Tenn. 479, 3 S. W. (2d) 1053, 8 S. W. (2d) 1099; Osborn et al. v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510.

"(2) As said so often, this rule requires trial judges and appellate judges, in considering a motion by defendant for a directed verdict, to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence,

the motion must be denied. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 556, 557, 249 S. W. 984; Walton v. Burchel, 121 Tenn. 715, 723, 121 S. W. 391, 130 Am. St. Rep. 788; Life & Acc. Ins. Co. v. Prieto, 169 Tenn. 124, 83 S. W. (2d) 251; Osborn v. City of Nashville, supra (182 Tenn. 197, 185 S. W. (2d) 510); Tennessee Cent. Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Poole v. First Nat. Bank of Smyrna, [29] Tenn. App. [327], 196 S. W. (2d) 563, 567-568.'' Lackey v. Metropolitan Life Ins. Co., 30 Tenn. App. 390, 397-398, 206 S. W. (2d) 806.

With the above quoted rule in mind, we will now state some material facts gathered from the evidence.

Defendant, on May 29, 1954, owned and operated the Paddock Cafe in the City of Memphis, located on the south side of Park Lane between Front Street and Center Lane, in Memphis, and the kitchen door of said restaurant opened directly onto Park Lane. Park Lane is a passageway, used almost exclusively by pedestrians, running from Front Street to Main Street. It is about 18 feet wide. Center Lane is the alley running north and south between Front Street and Main Street.

Defendant kept his garbage cans for his restaurant in the kitchen during the day. On the evening of May 28, 1954, defendant's son, an employee, then twenty years of age, who weighed 145 pounds, single-handed took a loaded garbage can of the capacity of 30 gallons, which weighed according to his own estimate, about 65 pounds, dragged it through the restaurant kitchen door, down about an 8 inch step to the sidewalk, and then dragged it along the sidewalk 75 feet to the intersection of North Front Street

and Park Lane. Defendant had been repeatedly corrected by the Restaurant Inspector for the City of Memphis for overloading his garbage cans. On the morning of May 29, 1954, there was a deposit of garbage, including bread, potato peals, greens, lettuce, kitchen sweepings, and miscellaneous scraps and perhaps grease, just outside defendant's kitchen door. The defendant's son who dragged the garbage can to Front Street retraced his steps to the kitchen door, and testified that he saw no garbage outside the door at that time, but, of course, the jury would not be compelled to believe his testimony.

There was evidence in the record that there were other restaurants and a sandwich shop in the same vicinity, or places where sandwiches or other edibles were sold, including the stand located in the Fall's Building across Park Lane from defendant's place of business, Turner's Sandwich Shop on Park Lane immediately adjacent to defendant's place of business, but fronting on Front Street, and Kress' Store the north side of which is located on Park Lane but on the east side of Center Lane. The proof establishes with reference to all of these other places, from which it is suggested the bread or other garbage on which Miss Tschumi slipped might have come, that defendant's restaurant was the only one of them where the garbage can had to be dragged along Park Lane to Front Street to be taken up by the City Garbage Department. All of the others placed their garbage cans directly out into Front Street or into Center Lane, from which places it was picked up by the City Garbage Department.

In this state of the evidence, although there is no direct testimony the same was placed there by defendant, we

think the jury might properly have inferred as the most probable explanation of its presence there, at the time Miss Tschumi slipped on same and fell, that the bread and grease on which she slipped, was left there the night before when defendant's son dragged the garbage can from that point to Front Street. Defendant's restaurant was the only one in that vicinity whose kitchen door opened onto Park Lane. One of the exhibits offered in evidence showed that there was such a door to Turner's Sandwich Shop; but, the evidence showed that this door apparently opening onto Park Lane, had not been opened in fifteen years.

We think there is little or no difference between the common law counts of plaintiff's declaration and the third count which charges violation of the City Ordinance, as presenting issues which should have been presented to the jury. The only difference between the third count of plaintiff's declaration and the other two counts was that if the jury found as a fact that the garbage on which Miss Tschumi slipped had been left there by defendant, same would constitute violation of the City Ordinance and, therefore, be negligence per se.

Assuming that the jury should find as a fact, as we think they had a right to do, that the soggy piece of bread on which Miss Tschumi slipped had been left there by -defendant, then we think the instant case is controlled by the decision of Rose v. Abeel Brothers, 4 Tenn. App. 431. In that case, Abeel Brothers were conducting a filling station in Chattanooga, Tennessee, and while emptying a truck tank which conveyed gasoline into their underground storage tank, same was allowed to overflow and run across the sidewalk. When the driver's attention was

called to this overflow, he ran to the tank and cut off the gasoline, stopping the overflow. He then went into the filling station for the purpose of getting a bucket of water to wash the gasoline off the street, but before he could do so the plaintiff, B. F. Rose, came along, walked through the flowing gasoline, wearing rubber shoes, and because of the gasoline and grease which had collected upon the sidewalk, he slipped, fell, and was seriously injured. He sued Abeel Brothers alleging the overflowing of the gasoline and also the accumulation of the grease upon the street, as his ground of action. Certain ordinances of the City of Chattanooga were alleged and introduced in evidence which made it a misdemeanor for the abutting property owner to obstruct the street by placing or permitting to remain upon the street, "Any straw, dirt, chips, shells, swills, nails, iron, fruit, peels, melon rinds, or other rubbish, whether offensive or not." There was a verdict in the trial court for the plaintiff. The principal contention of the defendant on appeal was that his motion for a directed verdict should have been granted. In rejecting this contention of the defendant and in affirming the judgment of the lower court, the Court of Appeals, speaking through Portrum, J., said:

"The case does not turn upon the liability arising from the overflow of the gasoline. It is charged on one of the counts of the declaration that Abeel Brothers violated the ordinance by permitting grease, which is an article handled in their business and subpect to wastage, to overflow and remain upon the sidewalks an unreasonable length of time, and as a result of this negligent act, and also of the innocent act, if you will, of the overflowing gasoline, which softened the grease, causing it to become thin and

run with the gasoline, so that when plaintiff stepped upon it, his foot slipped and he fell. This charge in the declaration was proven. A witness for the defendant below testified that the grease had been torn up by the wheels of the truck; others testified that the grease was running pliable at the time of the accident, but that prior thereto, it was hard and had caked upon the sidewalk. Counsel attempt to answer this allegation of negligence by saying that the plaintiff below had walked over the grease a few hours before the accident, but this does not answer, because the concurring cause, which was the overflowage of the gasoline, contributed by softening the grease and making it slippery.

"The fact that the defendant below permitted grease to accumulate upon the street is violation of a city ordinance, establishes negligence. Carroll Blake Construction Co. v. Boyle, 140 Tenn. 166, 203 S. W. 945. And had the party who permitted the gasoline to overflow not been the servant of Abeel Brothers, but a third party, nevertheless, the plaintiff would have been entitled to recover. For where two causes proximately contribute to an injury sued for and for only one of which the defendant is responsible, the other cause for which neither party is chargeable, the defendant is still liable notwithstanding the act of the third party. Columbia & Big Bigby Turnpike Co. v. English, 139 Tenn. 634, 202 S. W. 925." Rose v. Abeel Brothers, 4 Tenn. App. 431, 433-434.

The instant case is also controlled, in our opinion, by the decision of our Supreme Court in the case of Osborn

v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510, 512. In this case plaintiffs, Mr. and Mrs. Osborn, brought suits which were consolidated and tried together against the City of Nashville and against Dr. R. G. Collins and his wife for damages on account of the dangerous condition of the concrete sidewalk in front of the property owned by Mrs. Collins in the City of Nashville. About five months before the accident, this sidewalk had been painted by the defendant, Dr. R. G. Collins. The negligence of the defendant, Dr. Collins, was predicated upon the allegation that the sidewalk as painted was slick when wet. After motions of peremptory instruction had been overruled as to the City and Dr. Collins, the case went to the jury which returned verdicts in favor of both Mr. and Mrs. Osborn against both Dr. Collins and the City of Nashville. The Court of Appeals by divided Court reversed the judgment, holding that the motion for a directed verdict should have been granted and dismissed the case. Petitions for certiorari were filed by the plaintiff and granted by the Supreme Court.

In reversing the Court of Appeals and reinstating the verdict of the trial court, the Supreme Court, speaking through Mr. Justice Gailor, said:

"The only question presented by the appeal is whether the trial judge was justified by the evidence in submitting to the jury, the questions of negligence and contributory negligence. This question is formally presented in the petition for certiorari by the insistence that the Court of Appeals usurped the province of the jury in disregarding plaintiff's proof and holding that the defendants were not guilty of negligence, and apparently also holding that plain-

tiff was guilty of contributory negligence. Where under such circumstances, petition for certiorari is filed by plaintiffs alone, this Court will not weigh the evidence, but will consider only the evidence and the necessary inferences to be drawn from it that are most favorable to the plaintiff. Hines v. Partridge, 144 Tenn. 219 at page 233, 231 S. W. 16; [Mayor and City Council of] Nashville v. Reese, 138 Tenn. 471, at page 479, 197 S. W. 492, L. R. A. 1918B, 349.

"The province of this Court is not to reweigh the evidence, 'but to leave that duty where the Constitution has placed it, with the jury, as triers of facts, and if they act capriciously and arbitrarily to supervise their action.' Jackson v. B. Lowenstein & Bros., Inc., 175 Tenn. 535, at page 538, 136 S. W. (2d) 495, 496." Osborn v. City of Nashville, 182 Tenn. 197, 200-201, 185 S. W. (2d) 510.

In Osborn v. City of Nashville, the Supreme Court approved the verdict both against Dr. Collins and against the City of Nashville. We need not, however, consider that part of the opinion which deals with affirming the verdict against the City of Nashville, because in the instant case, the City of Memphis is not a party to the litigation, and that part of the Supreme Court's opinion in Osborn v. City of Nashville, would be inapplicable.

But, it is insisted on behalf of defendant that the judgment of the lower court in the instant case, should be affirmed on the ground that the plaintiff was, as a matter of law, guilty of contributory negligence which should bar her right of recovery. We think the question of plaintiff's contributory negligence as well as the question

of whether or not negligence of the defendant was the proximate cause of plaintiff's injury, should have been left to the jury.

In the instant case, the following is shown by the evidence:

The plaintiff, a sixty-four year old school teacher, carrying a raincoat, purse and galoshes on her arm, turned into Park Lane from Front Street and walked eastwardly toward Main Street. Earlier in the morning it had rained and there was water still standing in a declivity in the center of the Lane. The garbage, including the sodden and perhaps greasy piece of bread on which Miss Tschumi slipped and fell, was on the sidewalk just outside the kitchen door of the Paddock Cafe, the main deposit being about eighteen inches from the door. Park Lane slopes from both sides down toward the middle for drainage purposes, and there was water standing in the middle of the Lane. As the plaintiff testified, the rain had evidently washed grease from the garbage further away from the building and towards the center of the Lane. Plaintiff testified that she saw this garbage when she reached a point about even with the Paddock kitchen door. Her testimony was as follows:

"Just as I got to the back of that Paddock Cafe, up to that door, I noticed this—It looked like kitchen sweepings or garbage, and I went around it, I sought to miss it, but then this right foot slipped and I went down with great rapidity and hit this right hip."

Again, on cross examination, the plaintiff testified:

"I veered to the right generally, by force of habit. When I saw this garbage here, (indicating) I went

around it, because I am always looking, having always looked, and there was quite a bit of debris there.''

On further cross examination, plaintiff testified:

''Q. You were conscious it (the debris) was there from the time you—before you turned into Park Lane?

''A. I saw it before I got there.

''Q. You continued to walk, did you?

''A. I didn't—I tried to step around.''

That plaintiff did, in fact, go around the place of visible danger is attested by the fact that, although the main garbage deposit was located approximately eighteen inches from the kitchen door, plaintiff, upon falling, landed with her foot in the gully in the center of Park Lane, which is about eighteen feet wide.

Plaintiff persistently denied that she deliberately walked into the garbage which she had seen, and insisted that she tried to avoid it by stepping around it.

That the question of contributory negligence, as well as the question of whether defendant's negligence was the proximate cause of plaintiff's injury, was for the jury to determine, is, in our opinion, also controlled by the case of Osborn v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510, 513. On that subject, Mr. Justice Gailor, speaking for the Supreme Court in that case, said:

'' 'The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelli-

gent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery.' Carey Roofing Mfg. Co. v. Black, 129 Tenn. 30, 36, 37, 164 S. W. 1183, 1185 [51 L. R. A., N. S., 340].

" 'The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a matter of law, when and only when the facts are undisputable, being stipulated, found by the court or jury, or established by evidence that is free from conflict, and when the inference from the facts is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it.' 20 R. C. L. 169, 170, 171, sec. 141; Lovier v. City of Nashville, 1 Tenn. App. 401; Park City v. Owens, 7 Tenn. Civ. App. 359; Jackson v. City of Nashville, 17 Tenn. App. 413, 417, 68 S. W. (2d) 137." Osborn v. City of Nashville, 182 Tenn. 197, 203-204, 185 S. W. (2d) 510.

Also, on this same subject, the Supreme Court speaking through Mr. Justice Burnett in the case of Schindler v. Southern Coach Lines, Inc., 188 Tenn. 169, 175, 217 S. W.

(2d) 775, quoted again with approval the same language from Carey Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 36, 37, 164 S. W. 1183, 1185, 51 L. R. A., N. S., 340, which is quoted above from Osborn v. City of Nashville, 182 Tenn. 197, 203-204, 185 S. W. (2d) 510.

To the same effect is a very recent case, Shuler v. Clabough, decided by the Eastern Section of the Court of Appeals. In this case, the opinion written by Howard, J., says:

"The plaintiff was under a duty to use reasonable care for his own safety, but the standard of reasonable care is flexible, some occasions and circumstances requiring a higher degree than others; therefore, the question of whether the plaintiff under the circumstances then prevailing did or did not exercise the required standard of care was a question for the determination of the jury under proper instructions of the court. Moreover, where conditions are such as to mislead a person, his failure to discover danger is not generally negligence, as where plaintiff looks, but does not see a vehicle, or, seeing one, erroneously misjudges its speed or distance, or for some other reason does not recognize the danger, the question of his contributory negligence is generally one for the jury.' Where the evidence is in conflct, or, as here, where different conclusions might reasonably be drawn therefrom, questions of ordinary care and proximate cause are for the jury. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S. W. (2d) 512, 127 A. L. R. 1378; Campbell v. Campbell, 29 Tenn. App. 651, 199 S. W. (2d) 931. Likewise, questions of negligence and contributory negligence

are for the jury. McBroom v. Southeastern Greyhound Lines, 29 Tenn. App. 13, 193 S. W. (2d) 92; Campbell v. Campbell, supra.'' Shuler v. Clabough, 38 Tenn. App. 333, 274 S. W. (2d) 17, 20.

As was said by Hale, J., speaking for the Court of Appeals, Eastern Section, in the case of McBroom v. Southeastern Greyhound Lines, 29 Tenn. App. 13, 23, 193 S. W. (2d) 92, 96:

''Must a person look to see that every step will be safe? If so, there would never be a recovery for slipping and falling.''

We think the learned trial judge was right the first time when he overruled the defendant's motions for a directed verdict and submitted the issues to the jury, and that he was wrong when, on motion for a new trial, he reconsidered and granted the motion for a directed verdict. The mistrial following the failure of the jury to agree would have entitled plaintiff to another trial without the necessity of her appeal. We think she was entitled to have such other and new trial, and that is what she will get at the result of our reversal of the trial judge's granting of the motion for directed verdict on the defendant's motion for a new trial.

For the reasons stated, we think the judgment of the lower court must be reversed and this cause remanded to the Circuit Court of Shelby County for a new trial consistent with this opinion. The costs of the appeal will be paid by the defendant, Kirby Lee Bradley. The costs of the lower court may await the outcome of the trial there.

Avery, P. J. (W. S.), and Carney, J., concur.