Lucien V. **STRINGER**, Appellant,

v.

Harry S. **COOPER** and Cooper Office Equipment, Inc., Appellees.

Court of Appeals of Tennessee, Western Section.

Jan. 17, 1972.

Certiorari Denied by Supreme Court Sept. 5, 1972.

Petition to Reconsider Denial of Certiorari Overruled Oct. 6, 1972.

Wilbur C. Ruleman, Jr., Memphis, for appellant.

George S. Petkoff, Memphis, for appellees.

NEARN, Judge.

The question is whether or not the Trial Court was correct in granting the defendants' motion for a directed verdict at the close of the plaintiff's proof, the defendants having elected not to adduce proof.

It is the duty of this Court in reviewing the Trial Court's action on a motion for a directed verdict to look to all of the evidence, take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor, and to discard all countervailing evidence. If then there is any dispute as to any material determinative evidence, or any doubt as to the conclusions to be drawn from the whole evidence, the motion should not be granted. Country Maid Dairy, Inc. v. Hunter (1967) 57 Tenn.App. 138, 416 S.W.2d 367.

Lucien V. Stringer sued the defendants for damages for personal injuries sustained on June 20, 1968, when plaintiff allegedly stepped on an object on the shipping or service room floor of the premises owned by Harry S. Cooper and rented to Cooper Office Equipment, Inc., causing plaintiff to lose his balance and be thrown down an open stairwell. Plaintiff was an employee of a subcontractor who had contracted with the general contractor, who had contracted with Cooper, to make certain remodeling improvements to the second floor of a building, all of which is occupied by Cooper Office Equipment, Inc. The building upon which the improvements were to be made is located at 97 South Second Street in the city of Memphis.

Among the acts of negligence charged to the defendants are:

"a. In carelessly and negligently failing to maintain a reasonable safe place for plaintiff to walk and work.

b. In carelessly and negligently placing an air hose or other objects along the top of said stairwell and permitting said hose and objects to remain.

c. In carelessly and negligently allowing said air hose or other object to be placed in such a position as to preclude plaintiff from seeing it as an obstruction at the time of his said fall.

d. In carelessly and negligently failing to provide a self-closing door or other device or handrailing along the stairway to aid in preventing a fall to the bottom of said stairs.

e. In carelessly and negligently failing to warn plaintiff of the dangerous condition then and there existing."

The Declaration also charges the defendants with the violation of certain Ordinances of the City of Memphis in regard to stairways.

The Answer denied all acts of negligence or breach of any duty to the plaintiff, but the Answer admits that the defendant, Cooper Office Equipment, Inc., maintains upon the first floor "a shipping room for their use, and for their use only".

The proof, in its most favorable light to the plaintiff, shows that shortly after 8:00 a. m. on the morning in question plaintiff arrived at Cooper Office Equipment, Inc., in the company of the subcontractor. The subcontractor's business was that of tile setting and plaintiff is a tile setter. A tile or slate floor was to be laid on the second floor of the building. Other work had been done by other workmen on the second floor, but plaintiff testified that he saw no other workmen on the morning he arrived. All work being done was confined to the second floor. Entry to the building was made through the service door which opens from an alley into the room used by Cooper Office Equipment, Inc., as a shipping, receiving, and equipment repair room which service room was not open to the general public. Plaintiff was conducted to the second floor by the subcontractor who showed plaintiff where the work was to be performed. Plaintiff then returned downstairs and instructed his helpers to load a wheelbarrow with sand which was piled in the alley near the double doors of the service entrance. Plaintiff preceded the loaded wheelbarrow into the building and guided the helper to the freight elevator and operated the elevator to conduct them to the second floor. After dumping the sand and while returning to the service room, plaintiff noticed some chairs sitting in the service doorway to the alley and instructed the helper to get another load of sand while he moved the chairs out of the way so they would have a clear path. Plaintiff picked up two chairs and moved them to the side of the doorway, set them down and, as he started to return, stepped on something round that rolled, causing him to lose balance and he pitched into the open stairwell which he had not observed and suffered severe injuries to his right ankle and foot, breaking it so that some bones protruded and twisting it so that the front of his foot was almost turned around to the back. The plaintiff testified that the lights were not on in the service room and that he did not know where the light switches were located. The only light coming into the room was the light from the opened doors to the alley. After he fell in the stairwell, plaintiff began to shout for help. The tile subcontractor heard plaintiff's cry for help and came looking for him. The subcontractor testified that he could not tell where the plaintiff was located, but that his voice sounded as if he was in the basement and the subcontractor looked through the cracks in the floor attempting to locate plaintiff. The plaintiff shouted a warning that he had fallen in a stairwell and not to fall in on top of him. The subcontractor, not being able to see where plaintiff had fallen and fearing that he too might fall, crawled on the floor until he found the opening and then with the help of others extracted plaintiff therefrom. Some one then turned on the lights. The lights in the room hang from the ceiling and are operated by pull strings. The open stairwell into which plaintiff fell is located about six feet to the right as you enter through the service door.

The plaintiff, during World War II, suffered a wound which caused the removal of his right eye. However, with glasses he had 20–20 vision in the remaining eye.

After being brought up from the stairwell, plaintiff attempted to ascertain what had caused him to fall. He testified that on the floor at the head of the stairwell was what appeared to be some round hose and some varying lengths of pipe. He could not swear whether it was the air hose or pipe that had rolled under his foot, but what he stepped on was a round, hard object that could have been rubber, metal or plastic. Plaintiff was immediately taken to the hospital and has never returned to the service room where the injuries were sustained.

Photographs were introduced into evidence which reveal two hoses which we estimate to be from $\frac{1}{2}''$ to $1''$ in diameter which come up the stairwell along the side walls thereof. There is proof in the record that there is an air compressor located in the basement and that office machines that are repaired in the service room are sometimes cleaned by means of forced compressed air by an air hose. One of the photographs in evidence shows one hose lying at the top of the stairwell on the floor. The other hose is against the wall next to the alley and runs along that wall at the base thereof and goes under the ramp located at the service door to, we presume, its terminus. These photographs were not taken at or near the time of plaintiff's fall, but plaintiff testified that they were representative of the conditions present on the day of the injury.

At the close of the plaintiff's proof, counsel for the defendants moved the Court to instruct the jury to return a verdict for the defendants. The Court overruled the motion. Counsel for defendant stated that he could add nothing to the case as no one witnessed the fall of the plaintiff, rested his case, and renewed his motion for a directed verdict. The Court then directed the verdict for the defendants.

It is the appellant's argument that plaintiff enjoyed the status of an invitee and the defendants owed him the duty of reasonable care to provide a safe place for the plaintiff to work. That the proof reasonably showed the cause of the plaintiff's fall and that it was for the jury to say what constituted reasonable care under the circumstances.

It is the position of the appellees that the plaintiff is a licensee and not an invitee. That the defendants' only duty was not to willfully injure plaintiff. But, even if the plaintiff is an invitee, the jury could do no more than speculate and engage in conjecture and guesswork as to the cause of the plaintiff's fall. Further, that the plaintiff was guilty of contributory negligence as a matter of law and further that the plaintiff simply did not carry that burden of proof which the law imposes upon him; that is, plaintiff did not make out a prima facie case.

We think that the question of whether plaintiff was an invitee or a licensee has been heretofore answered by this Court when the then Presiding Judge McAmis, now retired, in the case of Shell Oil Company v. Blanks (1959) 46 Tenn. App. 539, 330 S.W.2d 569, speaking for the Eastern Section of this Court, stated:

"While the question of the owner's duty to an independent contractor or to his employees to furnish a safe place in which to work was not discussed in Chamberlain v. Lee, 148 Tenn. 637, 257 S.W. 415; and International Harvester Company v. Sartain, 32 Tenn.App. 425, 222 S.W.2d 854, both of these cases hold that the contractor and his employees are to be treated as invitees of the owner. We hold, therefore, that defendant's duty was not limited to the duty owing a mere licensee but that its liability is to be determined by the standard of care owing an invitee."

We hold in this case that the defendants' duty to the plaintiff is to be determined by the standard of care owing to an invitee.

It must now be determined if a jury could ascertain the cause of plaintiff's fall without engaging in conjecture, speculation and guesswork. Counsel for appellee insists that the cause of plaintiff's fall could only be determined by speculation and relies upon Moon v. Johnston (1960) 47 Tenn.App. 208, 337 S.W.2d 464; Tennessee Electric Power Company v. Van Dodson (1932) 14 Tenn.App. 54; Phillips, et al v. Newport, et ux. (1945) 28 Tenn. App. 187, 187 S.W.2d 965; and Brown v. Hudson (1962) 50 Tenn.App. 658, 363 S. W.2d 505. Without discussing each case, we understand the holding in those cases and many more like them to be that a jury may not speculate as to cause when one is not shown, or may not speculate between two equally probable causes, *for only one of which defendant is responsible.* Plaintiff testified he was caused to fall because he stepped on something that rolled under his foot and that at the place where he fell, hose and/or pipe were present, which are both round and will roll. Plaintiff testified as to a cause, the credibility is for the jury. If a bag of marbles had been spilled on the floor and a plaintiff slipped on one of them, we do not think the law to be that the plaintiff must identify the exact same marble upon which he stepped in order to get his case to the jury. If a defendant is responsible for negligently permitting several objects to be on the floor, he would be responsible for each one of them and it would make no difference which particular one caused the fall. There are many reported slip and fall cases in which it has been held that the plaintiff failed to make out a case because the cause of the fall was not shown. Some were dismissed because there was no explanation as to how the plaintiff fell. Some were those in which a plaintiff had no idea of what he stepped on, if anything, which might have caused him to fall. They have no application to the case at bar. We are of the opinion that a jury, from the plaintiff's proof, could determine the physical object(s) which caused plaintiff's fall without engaging in that degree of speculation forbidden by law.

The problem now arises as to the nexus, if any, between the objects on the floor and the issue of defendants' alleged negligence or alleged lack of reasonable care. It is evident from the record that the Trial Judge gave serious consideration to the motion for a directed verdict. The most vexing problem to the Trial Judge was the lack of proof of how long the object upon which plaintiff slipped had been on the floor and the lack of proof of how it came to be there. It must be admitted that there is no direct proof of either in this record. Prior to granting the motion, the Trial Judge made the following comments:

"[In] these fall down cases, I suppose that one of the hardest parts to prove is to show that, where there is something left on a stairstep, to show that the owner knew about it, or by the exercise of reasonable care, should have known it.

\* \* \* \* \* \*

But if the Plaintiff doesn't prove at all how long it has been there, of course, it might have been there just two minutes or three minutes or maybe the person just passed by and put it down.

\* \* \* \* \* \*

Mr. Ruleman, I think I will have to sustain the motion. I don't see any way out of it."

Evidently, the Trial Judge had in mind the holdings of the Appellate Courts in such cases as Gargaro v. Kroger Grocery & Baking Co. (1938) 22 Tenn.App. 70, 118 S.W.2d 561, and the line of similar cases, the holdings of which are to the effect that in slip and fall cases the burden is upon the plaintiff to show how the substance came to be where it was when the plaintiff slipped on it and fell.

■ We understand the rule to be that where the plaintiff is an invitee in a retail establishment, in that part open to customers and the public, and the plaintiff slips on some substance on the floor and falls, the plaintiff must show directly or by circumstances how it came to be there, and if the substance was not placed there by the defendant, then plaintiff must show directly or by circumstances how long the substance was on the floor. This is a reasonable rule. Any member of the general public entering the establishment could cause a substance to be upon the floor which might create a dangerous condition. The proprietor is not an insurer of the safety of those who enter the premises. Patterson v. Kroger Company (1964) 54 Tenn.App. 243, 389 S.W.2d 283. But if the proprietor was aware of the defective condition or had the reasonable opportunity to be acquainted with the defective condition, shown by the length of time the condition existed, and failed to ascertain its presence and correct it, liability could ensue. Allison v. Blount National Bank (1965) 54 Tenn.App. 359, 390 S.W.2d 716. Therefore, the matter of notice of the defective condition, which could be implied by circumstances tending to show an unreasonable length of time the defective condition existed prior to injury, is an essential element of the plaintiff's case. Of course, if the proof should show it was the defendant who placed the substance on the floor or caused the defective condition, no circumstances which would constitute notice need be shown for a defendant need not be otherwise notified of what he himself has done.

■ However, the case now before us differs in one major respect from that line of cases which adheres to the foregoing rule. Plaintiff's proof shows and defendants admit that the service or shipping room in which plaintiff fell was not an area open to the general public. Does the same rule apply, requiring plaintiff to show reasonable notice of a defective condition, when the plaintiff is an invitee to an area which is not open to the general public? We think not. When it is shown that the general area in which an invitee is lawfully present is not open to the general public and is ordinarily accessible only by the proprietor or his employees and is used solely for the internal affairs of the business establishment and not for retail purposes, we hold an inference arises that the condition of that area is caused by and is known to the proprietor, and plaintiff need not show either how the alleged defective condition came to be there or how long it had remained there. Of course, the defendants could adduce countervailing proof to show lack of responsibility or knowledge, but this Court may not indulge in speculation as to possible defenses.

It is our opinion that the plaintiff made out his prima facie case and the matter should have been submitted to a jury.

■ We think it was for the jury to say whether the fall was caused by the objects on the floor, whether the defendants should have turned on the lights, should have anticipated whether the chairs placed in the doorway would be expected to be moved by the workmen, or whether the plaintiff might reasonably be where he was when he fell, and all other aspects which would tend to show whether or not the defendants were negligent or breached the duty of reasonable care owing under the circumstances.

■ It has been argued by counsel for the appellee that plaintiff, if not guilty of proximate negligence, which proximate negligence is asserted, is at least guilty of proximate contributory negligence.

Among other cases, the appellee cites and quotes at length in his Brief from the case of Park v. Sinclair Refining Company, et al (1940) 24 Tenn.App. 204, 142 S.W.2d 321, to support the proposition that the plaintiff in this case is guilty of proximate contributory negligence as a matter of law. However, the facts in the *Park* case are easily distinguishable from the facts of the instant case. In *Park,* the plaintiff knew of the existence and was familiar with the location of the grease pit into which he walked in the dark in the nighttime. The plaintiff herein denies any prior knowledge of the condition of the premises. Just as we are of the opinion that the matter of the defendants' negligence, if any, should be left to the jury for determination; we are of the opinion that the matter of the plaintiff's contributory negligence, if any, should be left for determination by the jury. Questions of negligence and contributory negligence are usually matters for jury determination. If intelligent minds might draw different conclusions as to whether plaintiff's conduct was that of an ordinarily prudent person, the question of plaintiff's contributory negligence should be left to the jury. Tschumi v. Bradley (1956) 41 Tenn.App. 555, 296 S.W.2d 885. We are of the opinion that reasonable minds could differ.

It therefore results for the reasons given that the judgment of the Trial Court is reversed and the cause remanded to that Court for a new trial.

Costs of appeal are adjudged against the appellee and the costs below shall await the outcome of the new trial.

CARNEY, P. J., and MATHERNE, J., concur.