IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**JO ANN DUCKETT,**

Appellant,

Vs.

**FOX FIRE APARTMENTS;**
**FOX FIRE APARTMENTS 1;**
**FOX FIRE APARTMENTS 2;**
**AGS JACKSON ASSOCIATES, L.P.,**
**AGS PROPERTIES; OLD HICKORY**
**PROPERTIES, L.P.; RESOURCE CAPITAL**
**GROUP, INC.; OLD HICKTORY**
**APARTMENTS - PHASE II; GENCO**
**PROPERTIES; OLD HICKORY**
**PROPERTIES; MORRIS CROCKER;**
**LYNDA CROCKER, and HUNTER**
**MANAGEMENT COMPANY,**

Appellees.

Madison Circuit: C-95-044
C.A. No. 02A01-9709-CV-00215

> **FILED**
>
> **April 27, 1998**
>
> **Cecil Crowson, Jr.**
> **Appellate Court Clerk**

_____

FROM THE MADISON COUNTY CIRCUIT COURT
THE HONORABLE WHIT LAFON, JUDGE


Jerald M. Campbell, Jr.; L. L. Harrell, Jr.
of Trenton for Appellant

D. Scott Turner; Thomas F. Preston
of Memphis for Appellees


*REVERSED AND REMANDED*

Opinion filed:


**W. FRANK CRAWFORD,**
**PRESIDING JUDGE,W.S.**


**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

In this slip and fall case, Plaintiff/Appellant Jo Ann Duckett (Duckett) filed suit against

defendants, AGS Partners, MLP, L.P., Resource Capital Group, Inc. and Hunter Management

Group[1] for personal injury damages. Duckett appeals the trial court's order granting defendants' motion for summary judgment.

## PLEADINGS

Plaintiff's complaint alleges that on February 10, 1994, as she was leaving defendants' apartment complex "by means of a staircase, said railing or railings gave way, causing her to fall down said stairs." She avers that defendants are responsible for the maintenance and care of the property, and failed to meet that responsibility. The complaint alleges that defendants were guilty of negligence in failing to properly maintain the premises including the railing, failing to warn of a defective or dangerous condition, failing to use due care for the safety of others, and failing to properly inspect and determine the defective area in order to warn persons lawfully using the property.

Defendants' answer denies the material allegations of the complaint concerning negligence, joining issue thereon, and further avers that defendants exercised appropriate and proper care to persons lawfully using the premises. The complaint further avers that plaintiff was guilty of negligence which proximately caused the accident and injury and that her negligence is equal to or greater than that of the defendants, if the defendants were negligent in any manner. Defendants also rely upon assumption of risks on the part of the plaintiff.

Defendants subsequently filed a motion for summary judgment, alleging that there is no genuine issue as to any material fact and that defendants are entitled to a judgment as a matter of law. The motion is supported by a memorandum, plaintiff's deposition, the "pleadings and the entire record." In opposition to the motion, plaintiff filed her affidavit and also the affidavit of Irvin Lewis, III.

## FACTS

At the time of the accident, Duckett had been visiting her boyfriend, Irvin Lewis (Lewis), who was a tenant in defendants' apartment complex. Duckett was very familiar with the premises, since she had visited the apartment on a daily basis for nearly a year. Lewis's apartment is on the second floor of the apartment building. Two stairwells lead up to Lewis' apartment; one to the front, one to the rear. Duckett and Lewis both testified that they rarely

---

[1]The suit also named various other defendants, but these were all voluntarily dismissed by plaintiff.

used the front stairwell, because it was impossible to lock the front door from the outside when exiting the apartment. As a result, Lewis insulated the front door and placed objects in front of it.

The accident occurred when Duckett was preparing to walk down the rear stairwell. The stairwell is composed of concrete and steel and the railings are composed of steel. Duckett testified that the stairs were icy at the time of the accident and, thus, she supported herself by holding the railings. According to Duckett, immediately after she grasped the railings, the railings gave way, causing her to lose her balance. Duckett's feet slipped out from under her and she fell down the entire length of the stairs.

Duckett and Lewis both testified that before the accident, they had notified the defendants that the railings were rusted and loose. Defendants allegedly did not attempt to repair the railings. Duckett, nevertheless, testified that until the time of the accident, she did not consider the railings to be "dangerous to the extent that [no one] should attempt to use the stairway." According to Duckett, "at no time had I ever noticed the railing to give way in this manner [at the time of the accident] or to be loose to that extent."

ISSUES

The sole issue for review is whether the trial court erred in granting summary judgment to the defendants.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a

3

> genuine, material fact dispute to warrant a trial. In this regard,
> Rule 56.05 provides that the nonmoving party cannot simply rely
> upon his pleadings but must set forth *specific facts* showing that
> there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted) (emphasis in original). Where a genuine dispute exists as to any material fact

or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing

*Dunn*, 833 S.W.2d at 80).        In *Jones v. Exxon Corp.*, 940 S.W.2d 69 (Tenn. App. 1996), this Court

stated:

> In order to bring a successful suit based on a claim of negligence, the plaintiff
> must establish:
>> (1) a duty of care owed by the defendant to the plaintiff; (2)
>> conduct falling below the applicable standard of care
>> amounting to a breach of that duty; (3) an injury or loss; (4)
>> causation in fact; and (5) proximate, or legal cause.
> *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993) (citing
> *McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn. 1991); *Lindsey v.*
> *Miami Dev. Corp.*, 689 S.W.2d 856, 858 (Tenn. 1985)).

*Id.* at 71.

A determination as to whether a defendant owes a duty to a plaintiff in any given situation is a question of law

for the court. *Bradshaw v. Daniel*, 854 S.W.2d 865 (Tenn. 1993). Plaintiff asserts in her brief that "the trial court

granted summary judgment in favor of the defendants upon counsel's argument that plaintiff assumed the risk of injury

by attempting to walk down the stairs on the property in question on February 10, 1994." On the other hand, defendants

assert that the court correctly granted summary judgment: (1) under the open and obvious rule; (2) because plaintiff

cannot prove the defendants breached their duty of care of the plaintiff; (3) because plaintiff assumed the risk of injury;

and (4) because plaintiff's contradictory testimony about the condition of the railings extinguishes her tes

A business proprietor has the duty to exercise reasonable care and to maintain the premises in a reasonably safe

condition for invitees. *Haga v. Blanc & West Lumber Company, Inc.*, 666 S.W.2d 61 (Tenn. 1984). *See*

*also Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1984) (holding that a premises owner or possessor owes to the

social guest the same duty as that owed to an invitee). "Proprietors are under an affirmative duty to protect invitees,

among them business visitors, not only against dangers of which they know, but also against those which with reasonable

care they might discover." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980) (citing *Illinois Central*

*Railroad Co. v. Nichols*, 173 Tenn. 602, 118 S.W.2d 213 (1937)). The *Waters* Court observed:

> This duty of the owner or occupier of the land arises from the position of
> control which this person in possession occupies; he is the person normally best
> able to prevent any harm to others. See *Paradiso*, supra. This same position
> of superior knowledge and control gives rise to the requirement that the possessor
> of land exercise ordinary or reasonable care to provide a reasonably safe place for
> the performance of work by employees. *Stringer v. Cooper and Cooper*
> *Office Equipment, Inc.,* 486 S.W.2d 751 (Tenn. App. 1972).

*Waters*, 594 S.W.2d at 387.

In the instant case, Duckett testified in her deposition that in about July of 1993, she made a list of problems with Lewis's apartment and also the problems with the rails on the stairwell which she furnished to the defendants. As to the railings, she noted that they were loose and were rusted. She testified that this condition remained the same from that time until the time of her accident. She felt that the railings were in a dangerous condition because they were loose and rusted steel was exposed along with jagged edges. The left-hand rail at the top was not even attached to the wall or anything. Duckett testified concerning the accident that when she left Lewis's apartment and walked out on the landing and reached the stairs and the railing, she lifted her foot to take the first step down the stairs and that is when she fell. We quote from the transcript of her deposition:

Q. So you're at the very top of the landing and you haven't even stepped down one step?

A. I had – I just picked up my foot to take the first steps down, holding onto the railings, the railings gave under my - - well, if you want to call it under my weight or under my grip or whatever, and I never took the – actually never took the first step and there's fourteen steps.

Q. Okay. Which railing did you grab first?

A. Both. I was -- I was holding to – I stopped and was holding to both railings.

Q. Okay. And what were the railings doing when you grabbed them? Were they wobbling? Did they completely come off? What happened?

A. No, they didn't – they didn't come off. they just gave under the weight of the grip of my holding them.

Q. Okay. Tell me what you mean by gave?

A. Well, when something is loose, it will shift.

Q. Okay. So it moved?

A. Yes.

Q. Okay. How much of a distance would it move?

A. Right offhand, I don't recall.

Q. I mean wait like it had moved an arm's length or would it move a few inches?

A. Oh, no, we're talking, you know, like this.

Q. Okay. You're indicating about four or five inches or something like that?

A. Several inches, yes.

Q. So, it wasn't a matter of feet?

A. No, no, no, no, no, no.

Q. Would -- okay. Both railing were doing that. Is that what you said?

A. Yes.

Q. Okay. Would the railings – on this day of the accident, were they moving the same amount they had moved prior to the time of the accident?

A. I guess so. I never really paid that much attention because I'd never -- I'd never fallen down those steps.

Q. Right.

A. So --

Q. I was just wondering if they were any -- if they moved any more than they would prior to the accident or was it the same if you know.

A. Well if -- if I know -- I mean they were -- when I took these pictures, they were giving the same amount that they always had. As far as the instability, they were still unstable.

Q. Okay. Other than moving or shifting several inches, were they doing anything else?

A. Not that I recall, no.

Q. At any time, did they come completely off?

A. No.

         *              *              *

Q. Okay. did you slip or were you slipping on the ice?

A. No.

Q. I guess I'm asking what caused you to fall. Was it when you stepped down and had your weight on the railing or was it something else?

A. As I was stepping down, when the rails gave, it caused me to lose my balance and that's when I fell. And, I just -- my feet just went out from under me.

Q. And your feet did slide?

A. Just went out from under me.

Q. Okay. Now is that on the ice?

A. On the -- on -- well, as I stepped down to the first step, that's when I just -- that's all I remember until I was on the sidewalk.

Q. Okay. when you stepped down, did your foot actually hit the first step?

A. I don't remember.

Q. Okay.

A. I do not remember.

Q. Do you recall whether your foot touched ice as it hit down?

A. Where I was standing, there was ice everywhere, ice and snow everywhere.

6

Q. And when you say your feet slid out from under you, are you saying that because of the ice that you slid?

MR. HARRELL: I think she said the feet went.

Q. (by Mr. Turner) Okay. When you say your feet went out from under you, is that because of the ice?

A. I can't say that it was because of the ice anymore than I can say it was because the railings gave, because they had no stability there to support me. Because I was depending on the stairs for my safety to get down – the stair railings, for my safety to get down the stairs.

Q. Did both of your feet go out from under you at the same time or just one?

A. I don't remember it all happened so fast.

*     *     *

Q. When your feet went out from under you, did your feet go out from under you before you grabbed the rails or as you grabbed the rails or after you had grabbed the rails?

A. After I grabbed the rails.

Q. Did you fall all the way down the entire flight of stairs or was it just part of the way?

A. All the way down.

Q. After your feet went out from under you, did you let go of the rail?

A. yes.

Q. Is that when you fell?

A. After my feet – after – after I initially started falling, my first instinct was to grab something to catch myself, and I was afraid that I would either catch my arm between the slats and I would break my arm or get caught to where I would do more damage. So, I mean, in just – in just a split second, there are so many things that go through your mind when you're going down a flight of stairs that high, that it was all over within just a matter of seconds. I don't remember screaming. The lady downstairs heard me scream and came out to see what was wrong and that's – I was already laying on the ground on the sidewalk at the bottom of the stairs.

Also, Duckett and her witness, Lewis, testified in their affidavits that prior to the time of the accident they had never noticed the railing give way in the manner and to the extent that it did at the time of the accident.

Defendants assert that any deficiency in the railing was "open and obvious" to plaintiff and thus bars recovery because defendants had no duty to warn plaintiff of the danger. *Eaton v. McLain,* 891 S.W.2d 587, 595 (Tenn. 1994). Defendants argue that plaintiff cannot "as a matter of law prove that defendants breached their duty of care to the plaintiff." The trial court apparently relied upon *Eaton* in granting summary judgment. However, on March 30, 1998, while the instant case was pending in this Court, our Supreme Court released its opinion in the consolidated cases of *Coln v. City of Savannah*, No. 02-S-01-9702-CV-00008 and *Van Cleave v. Markowski*, No. 02-S-01-

7

9704-CV-00026, 1998 WL 139096 (Tenn. Mar. 30, 1996), holding:

> To summarize, we join those jurisdictions that have limited the open and obvious doctrine in favor of the Restatement approach. That a danger to the plaintiff was "open and obvious" does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care. The circumstances of the case are then analyzed under comparative fault.

*Id.* at *9.

In so holding, our Supreme Court noted that the separate analysis of duty was retained and mechanisms of summary judgment and directed verdicts are still viable to evaluate cases at preliminary stages in the pr[o]

> A summary judgment remains appropriate, for example, where the plaintiff has not produced sufficient evidence to meet the "duty" component, or any other component of a negligence claim, as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). A directed verdict, on the other hand, remains appropriate if the court evaluates the evidence in a light most favorable to the plaintiff and determines that reasonable minds could not differ in finding that the fault of the plaintiff was equal to or greater than the fault of the defendant. *Eaton*, 891 S.W.2d at 590."

*Id.*

Duty is a legal obligation owed by defendant to plaintiff to conform to a reasonable person's standard of care for the protection against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In *McCall*, the Court said:

> Several factors must be considered in determining whether a risk is an unreasonable one. Those factors include the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct. *Restatement (Second) of Torts, §§* 292, 293 (1964). Stated succinctly, a duty of reasonable care exists if defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property.

*Id.* at 153.

Defendants contend that they had no knowledge, either actual or constructive, that the railings were dangerous or contained a latent defect. They point to plaintiff's testimony that she did not experience any difficulty in using the railings and did not think the railings were dangerous until the time that she actually had the accident. Plaintiff's affidavit states:

> I had previously noticed that there were problems with the railing, but I had never experienced any difficulty when I attempted to use the railing. Whenever I was climbing or descending the steps and carrying something, I would hold to the

railing for additional support. At no time did I think the rails were dangerous to the extent that neither I nor anyone else should attempt to use the stairway.... At no time when I used the stairway did I have any problem with the railings, and they always gave me the support that I needed. It was only when I exerted additional strain on the railings that a problem arose with them bending or giving way.

This testimony is corroborated by Lewis's affidavit. Although the testimony of plaintiff and Mr. Lewis convey the perception that they did not consider the railings dangerous, this perception is premised on the fact that they had been able to use the railing without difficulty prior to the time of plaintiff's accident. It is also established from their testimony that the defendants were notified of defects in the railings, and defendants do not dispute that this was called to their attention. As heretofore noted, defendants are obligated to exercise reasonable and ordinary care to maintain the premises in a reasonably safe condition for those lawfully using the premises. *Smith v. Inman Realty Co.*, 846 S.W.2d 819 (Tenn. App. 1992). Plaintiff's deposition and affidavit also establish that the railings were in the same condition immediately prior to the accident as they were when she notified defendants of the problems with the railings; thus indicating that defendants apparently took no steps to repair the railings. It would appear that defendants were put on notice that railing defects existed. It is foreseeable that the condition of the railings would render them dangerous to the user if subjected to extraordinary stress. Moreover, it is foreseeable that the condition of the railings could deteriorate with time and thus reach the point of becoming dangerous to the user. Under these circumstances, there is a genuine issue of material fact as to whether the defendants exercised reasonable and ordinary care in the maintenance of the premises. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

Defendants also assert that based on plaintiff's deposition and affidavit, she assumed the risk of injury, and, thus, the trial court was correct in granting summary judgment on that basis. We must respectfully disagree. In *Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994), our Supreme Court said:

> Moreover, we do not conisder it necessary or desirable to retain the doctrine of secondary implied assumption of risk as a separate defense. Rather, the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.

*Id.* at 905. It is for the trier of fact to consider whether a reasonably prudent person in the

exercise of due care would have acted as the plaintiff acted under the circumstances then existing.

Defendants also assert that plaintiff's testimony in her deposition and in her affidavit are contradictory and, thus, the testimony is canceled out, citing *Taylor v. Nashville Banner Pub. Co.*, 573 S.W.2d 476 (Tenn. App. 1978). We do not disagree with this general statement of law. However, in reading plaintiff's deposition, it appears that she was unclear as to the exact mechanics of the movement of the railing at the time of the accident, and the affidavit voices the opinion that it appeared to move somewhat more at the time of the fall than it had on previous occasions. After a careful reading of the deposition and the affidavit, we are of the opinion that the alleged inconsistencies in this instance should go to the weight of the evidence rather than to its admissibility.

After a careful perusal of the record in this case, we are reminded of the admonition of our Supreme Court in *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975), where Justice Harbison, writing for the Court, commented on the use of summary judgment:

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id.* at 24-25.

The order of the trial court granting summary judgment is reversed, and this case is remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed against appellees.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

10