# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

PEGGY STRICKLIN ARNOLD,  )
and EDWARD L. ARNOLD,  )
                          )
     Plaintiffs/Appellants,  ) **Shelby Circuit No. 61907 T.D.**
                          )
VS.  ) **Appeal No. 02A01-9803-CV-00075**
                          )
DEHONEY BISHOP INTERIORS,  )
INC., d/b/a DEHONEY INTERIORS,  )
                          )
     Defendant/Appellee.  )

**FILED**

**September 18, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE KAY S. ROBILIO, JUDGE

**MICHAEL S. LONG**
**LONG, UMSTED & JONES**
Memphis, Tennessee
Attorney for Appellants


**THOMAS L. BRANNON**
**McWHIRTER & WYATT**
Memphis, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

                                    **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

     Plaintiffs Peggy Stricklin Arnold and Edward L. Arnold (hereinafter referred to as

"Plaintiff" or "Plaintiffs") appeal the trial court's order granting summary judgment in favor of Defendant Dehoney-Bishop Interiors, Inc. (hereinafter referred to as "Defendant" or "Dehoney"). For the reasons hereinafter stated, we hereby reverse the judgment of the trial court and remand this case for trial.

## I. Factual and Procedural History

In October of 1993, Bowden Building Corporation was the general contractor for a model home constructed at 2275 Lake Springs Lane in Cordova, Tennessee. Dehoney Bishop Interiors was a subcontractor hired by Bowden to install carpet in the model home. Bowden is the owner and manager exercising exclusive control over the home. Bowden's models serve as a visual depiction of the style and layout of a home built by the Bowden Building Corporation.

On October 17, 1993, Plaintiff Peggy Strickland Arnold visited the said model home which was open to the public. She was wearing Reebok running shoes at the time. Ms. Arnold initially viewed the downstairs area of the model home and then proceeded upstairs to view the remaining rooms. On her way upstairs, she noticed that the hand rail was loose at the top of the stairway. Ms. Arnold did not notice any condition concerning the carpet on her way up the stairs. After Ms. Arnold had finished viewing the upstairs area, she began walking down the stairway. Ms. Arnold was not holding the hand rail and as she reached the second step in her descent, she felt as if her feet were knocked and the carpet pulled out from under her. As a result, Ms. Arnold fell down the stairs receiving multiple injuries, including a ruptured disk in her neck.

Steven Ottosen, agent for Bowden Building Corporation, had traversed the stairs in question approximately 20 times on that same day and had traversed the stairs hundreds of times in the preceding months. Ottosen never noticed any defective conditions with the carpet. More than 200 people had used the same stairs in the month preceding Ms. Arnold's fall, none of which reported any dangerous or defective condition

2

of the carpet and none of whom tripped or fell.

The carpet had been installed on the stair by Defendant Dehoney Bishop Interiors, Inc. on or about June 7, 1993. The carpet condition was repaired by employees of the defendant on October 18, 1993.

On May 23, 1994, Plaintiffs filed a Complaint for Money Damages, and filed an Amended Complaint for Money Damages on June 30, 1994. Defendants filed their answer on August 8, 1994. A motion for Summary Judgment was filed by Defendant on November 7, 1997, with Plaintiffs filing their response on December 4, 1997.

In support of its Motion for Summary Judgment, Defendant contended that Plaintiffs did not come forth with evidence as to the material issues of breach of duty of care owed Ms. Arnold by it, or that it had any notice, actual or constructive, of any defective condition in the carpet or the installation. Defendant asserted that Plaintiffs did not present evidence to these material issues upon which reasonable minds can disagree. Additionally, Defendant contended that Plaintiffs could not prove essential elements of a prima facie case against Defendants. Particularly, Defendant argued that the evidence is uncontradicted that it used reasonable care in installing the carpet in the model home. Also, Defendant insisted that it did not breach a duty to Ms. Arnold because no allegedly defective condition existed. Alternatively, Defendant contended that if a defective condition did exist, it had no notice of the condition.

In responding to Defendant's Motion for Summary Judgment, Plaintiffs contended that there is an inference that the carpet was negligently installed or it would not have come loose when Ms. Arnold walked on it. Plaintiffs pointed to the testimony of the carpet installer, Fred Fulgenzi, who stated that in order for properly installed carpet to come loose someone would have to physically pull the carpet up. Hence, Plaintiffs argued that since the carpet was loose and no one pulled it up, the carpet must have been negligently installed for it to have come loose absent physical pulling. Plaintiffs also pointed to the

3

testimony of their expert, Virgil Perry, professional carpet installer for 19 years. Perry opined that the carpet was not properly installed on the stairs because properly installed carpet would not come loose from merely walking on the carpet.

The trial court found that there were no genuine issues as to any material facts in this cause and entered an Order Granting Defendant's Motion for Summary Judgment on January 29, 1998. This appeal by the Plaintiffs followed.

## II. Notice

This Court will dispense quickly of the Defendant's argument that Defendant did not breach a duty to the Plaintiff because Defendant had no notice of any allegedly defective condition. The Defendant states that it could not have anticipated or repaired any allegedly defective condition without notification from Bowden homes, Inc. Defendant alleges that since Plaintiff cannot establish that Defendant owed Plaintiff any duty to warn of an allegedly defective condition, Plaintiff cannot prove an essential element of her prima facie negligence claim.

Notice to the Defendant is not an issue in this case. "If proof should show it was defendant who . . . caused the defective condition, no circumstances constituting notice need be shown, since defendant need not be otherwise notified of what he himself has done." Stringer v. Cooper 486 S.W.2d 751, 757 (Tenn. Ct. App. 1972). Plaintiffs allege that Defendant improperly installed the carpet on the stair on which the carpet came up, causing her to fall. This is not a premises liability case. The Defendant in this matter is Dehoney Bishop Interiors, Inc., the installer of the carpet. A consent order was entered dismissing with prejudice Bowden, the owner of the premises upon which Plaintiff was injured. If Bowden remained a Defendant in this action, and the defective condition was determined to be caused by another, notice to Bowden would be an issue. However, the only remaining Defendant is Dehoney and notice to a negligent party as to their own negligence is not required. Defendant's motion for summary judgment should therefore not

4

be granted based upon lack of notice to Defendant.

### III. Improper Installation

Decisions to grant a summary judgment do not enjoy the presumption of correctness on appeal, because they involve only questions of law. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn.1995). Our task on appeals from summary judgments is to determine independently whether the moving party has satisfied the requirements of Tenn. R. Civ. P. 56. Hembree v. State, 925 S.W.2d 513, 515 (Tenn.1996); Payne v. Breuer, 891 S.W.2d 200, 201 (Tenn.1994). Tenn. R. Civ. P. 56.03 requires a party seeking a summary judgment to demonstrate that there are no genuine disputes concerning the material facts and that they are entitled to a judgment as a matter of law. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn.1997); Wyatt v. A-Best Co., 910 S.W.2d 851, 854 (Tenn.1995).

As a general rule, negligence cases are not amenable to disposition on summary judgment unless, from all the facts together with the inferences to be drawn therefrom, facts and inferences are so certain and uncontroverted that reasonable minds must agree. Keene v. Cracker Barrel Old Country Store, Inc. 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992). In negligence cases, summary judgment is only appropriate when the inferences which may be drawn from the uncontroverted facts are so certain that all reasonable persons must agree on them. Id. at 503. Conversely stated, if the facts are uncontroverted, summary judgment is inappropriate if reasonable minds could differ as to the inferences to be drawn therefrom. Id. at 503.

The Tennessee Supreme Court expounded on the summary judgment issue in Byrd v. Hall 847 S.W.2d 208 (1993). The Court provided the following guidance:

> In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the question should be considered in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, i.e., the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.

5

> Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied. Poore, 666 S.W.2d at 49 ("[I]f the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact it is its duty to overrule the motion."); Dooley v. Everett, 805 S.W.2d 380, 383 (Tenn. Ct. App.1990). The court is not to "weigh" the evidence when evaluating a motion for summary judgment.
> Byrd v. Hall at 210-11.

This Court will first address Defendant's allegation that no such defective condition existed. Defendant points out that Plaintiff was the only person to claim there was a defect in the carpet out of the hundreds of visitors to use the stairway of the model home. Defendant takes the position that Plaintiff did not notice a defective condition in the carpet because no such condition existed. However, there is evidence in the record of the following facts: The Plaintiff did slip and fall on the stairs which were carpeted by Defendant, the carpet came up, and the carpet looked like a slide between the step above it and the step below it after the fall. The Plaintiff reported the incident to Steve Ottosen, a salesman at Bowden Homes, and Mr. Ottosen attempted to kick the carpet back in place with the heel of his shoe. Defendant was called back out to the property after the incident to check the carpet, and Defendant's employees did in fact return to the home on October 18, 1993, the day after the incident. There is certainly sufficient evidence on this issue to go to a jury.

The main issue upon which this case turns is whether there is a dispute as to any material fact concerning the Defendant's installation of the carpet. Defendant contends that it has presented uncontradicted evidence that the carpet at issue was installed in a reasonable manner which is customary for the industry. Defendant asserts that the carpet was installed properly and there is no evidence that it was improperly installed.

Plaintiffs, on the other hand, contend that they presented sufficient circumstantial evidence to create a triable issue for the jury. Plaintiffs admit that their expert did not view the accident scene or the actual installation of the carpet. However, their expert testified that there is only one way to properly install carpet, and if carpet is properly installed it will not slip or come up unless someone physically pulls the carpet up. Plaintiffs claim that

6

since there is no evidence that someone physically pulled the carpet up, the fact that it came loose is itself evidence that it was not properly installed.

While Defendant asserts that the evidence is uncontradicted that the carpet was properly installed, this Court is not equally convinced. The record made available to this Court does not contain the full deposition of Fred Fulgenzi, the installer of the carpet. This Court has before it only such portion of that deposition as was attached to the Defendant's Memorandum submitted in support of their motion for summary judgment. In that portion of the deposition, the installer appears to be saying that he does not remember this particular installation, or the subsequent repair to the carpet. He testifies to the proper installation *procedure* and testifies that this is how he regularly installs carpet. This Court takes note of the statement made by the installer that "I've been doing this for twenty years. I don't make too many mistakes, but sometimes, we do."

The installer, Mr. Fulgenzi, also testified that if carpet is installed properly, it will not normally come loose. He stated that the only thing he could think of causing it to come loose is somebody coming and tearing it up, somebody pulling on it. He testified that someone vacuuming the carpet would not cause it to come off the tack strip if it was properly installed. Mr. Fulgenzi further stated that steam cleaning would not cause properly installed carpet to come loose, but rather would shrink it up and make it tighter on the pins. "The only way carpet can come loose if it is properly installed is somebody putting their hand underneath it and pulling it up."

Plaintiffs' expert, Virgil Perry, a carpet installer for more than 19 years, testified that there is only one way in the industry to professionally install carpet on stairs. He testified to the proper method, which was the same method the actual installer, Fred Fulgenzi, testified to. Mr. Perry then testified that the only way properly installed carpeting will come up is if you grab the carpet and lift it straight up which would get it off the tack strip and then pull it in an upward and outward motion. He testified that for the carpet to come loose without physically pulling it up, it would be the result of the carpet not being completely over both sets of nails, which would not be the proper installation.

7

Mr. Perry further testified that it is not uncommon for a carpet installer occasionally to install carpet improperly. He stated in relevant part:

> But my opinion is this because it's a common circumstance, I've come in contact with it, all carpet stores are quite familiar with it, carpet layers work based on their speed. We make between three fifty, four hundred dollars a day, so when we start a job one day, we don't want to have to go back tomorrow because tomorrow interferes with making the same amount of money that day. Okay. So sometimes we'll run into situations where we'll put that, we'll think we got that carpet in there and it may not. And it's not an uncommon call for a carpet company to receive, hey, listen, I've got--you know, one of my steps coming loose and maybe two. Usually no more than one or two because carpet layers, even though we work fast, we try to be pretty efficient.

On cross examination, Mr. Perry was asked if he ever had any carpet over stairs come loose. Mr. Perry stated yes and that he would say that he was negligent in laying the carpet when it came loose.

> Q: You would say that you were negligent?
>
> A: Absolutely. That's how come I give all my customers a year's warranty on the quality of my workmanship. It's normally a standard in our industry because we recognize, or the industry recognized that there are times when men will make mistakes. It's all part of the human element. And we go back out there and take care of that at no cost to the store, so as a result it's at no cost to the--

Mr. Perry did testify in his deposition that he did not see whether this particular carpet was properly installed on the steps and he therefore could not state that it was improperly installed. In his deposition testimony, he repeatedly stated that he was basing his testimony on the proper method of installation in the industry, that there is only one proper method, and if the carpet is properly installed it will not come loose absent physically pulling it up. He later stated in an affidavit that it was his opinion that the carpet was not properly installed over both sets of nails on the tack strips and that the cleaning of the carpet, walking upon the carpet by prospective purchasers and salesmen or a combination of those things caused the carpet to come loose from the tack strips due to its improper installation.

Defendant makes much of this contradiction between the deposition testimony and the affidavit of Mr. Perry. However, the fact that the carpet was not properly installed

8

appears to be Mr. Perry's position from the beginning. While it is true that Mr. Perry admitted in his deposition that he didn't see the carpet and could not say that it was improperly installed, the main thrust of his entire testimony was that it *must have been* improperly installed, or the carpet would not have come up. While this Court cannot delve into the mind of Mr. Perry, it is certainly possible that in his deposition Mr. Perry was saying that he had no first hand knowledge, had no direct evidence, that the carpet was improperly installed. In his affidavit, Mr. Perry states the conclusion that he was, in fact, urging in his deposition testimony. His opinion is that the carpet was improperly installed because that is the only way it would have come loose.

There was additional testimony on the carpet installation from Mr. Roger Bishop, co-president of Dehoney Bishop Interiors, Inc. He testified that Fred Fulgenzi was in fact the installer of the carpet in question. Mr. Bishop had installed carpet for approximately ten years, although he admitted that he had not installed carpet in quite some time. He testified that excessive cleaning could cause a carpet to come loose from a tack strip. He stated "maybe too much walking, which is a bit unlikely. Then, pulling it up." He testified that excessive cleaning could cause it to come loose because "so much water on the backing has a tendency to make it release, and then it will also shrink it and it is just a constant problem of shrinking and delaminating the carpet and it will finally release it at some point."

Facts may be inferred from circumstantial evidence, and an inferred fact may be the basis of a further inference to the ultimate or sought-for fact. <u>Benson v. H.G. Hill Stores, Inc.</u>, 699 S.W.2d 560, 563. (Tenn. Ct. App. 1985). In a civil case depending upon circumstantial evidence, it is sufficient for a party having the burden of proof to make out the more probable hypothesis, and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. <u>Id.</u> at 563. It is only necessary for the plaintiff to present proof which, if believed by the jury, makes plaintiffs' theory of the case more probable than the theory of the defendant. <u>Id</u>.

The Plaintiffs' case relies mainly on circumstantial evidence. They put on proof that there is only one proper way in the industry to install carpet on stairs, and if it is installed

9

properly, it will not come up as it did in this case. The installer himself testified that properly installed carpet will not come up absent someone physically pulling it up. While there was testimony of Mr. Bishop that excessive cleaning and perhaps too much walking could cause the carpet to come up, it is not necessary that the proof of the plaintiffs exclude every other reasonable conclusion. Benson at 563.

Defendant asserts that it has presented uncontradicted evidence that the carpet at issue was installed in a reasonable manner which is customary for the industry. However, neither party has chosen to include in the record the deposition of Mr. Fulgenzi, the installer of the carpet, that is so crucial to this issue of proper installation. This Court does have available in the record the portion of the deposition testimony of Mr. Fulgenzi which was attached to Defendant's memorandum in support of their motion for summary judgement. This Court must base its ruling on what we have before us in the record. It appears from his testimony that Mr. Fulgenzi does not remember this particular installation. Unfortunately, this Court has only his answer, and not the particular question asked. However, nowhere in the record before this Court does Mr. Fulgenzi state that he *does* remember the installation. It is also of importance that Mr. Fulgenzi states that he sometimes makes mistakes.

The jury in this case would be entitled to consider the various inferences to be drawn from the proven facts and to determine which in its judgment is the most probable. The jury is not permitted to speculate as to which of two equally probable inferences is applicable, but that is not the situation here. There is no testimony in the record before this court that Mr. Fulgenzi remembers installing this particular carpet properly. There was testimony of two persons that the only way properly installed carpet could come up is by physically pulling it up. Alternatively, there was testimony by Mr. Bishop that excessive cleaning or perhaps too much walking could cause properly installed carpet to come loose. It would be the job of the jury to weigh the credibility of these witnesses and decide what testimony to believe. Furthermore, if the jury chose to believe Mr. Bishop, they would also have the job of deciding if there was, in fact, excessive cleaning or too much walking on the carpet.

10

The jury could fairly believe the testimony of Mr. Perry and Mr. Fulgenzi that the only way properly installed carpeting would come up is if it is physically pulled up. The jury could then fairly infer that because this carpet came up in the absence of such physical pulling, it was improperly installed. From the testimony of the installer himself that he sometimes makes mistakes, and from the testimony of Plaintiffs' expert, Mr. Perry, that it is not uncommon to improperly install carpet on a stair or two in an otherwise proper installation, the jury could fairly reason that Mr. Fulgenzi, while utilizing the proper *method* of installation, did not properly install the carpet on this particular stair. Taking the strongest legitimate view of the evidence in favor of the nonmoving party, we are of the opinion that the facts and the reasonable inferences to be drawn from those facts make a prima facie case for the plaintiff and render summary judgment inappropriate.

We are therefore of the opinion that the trial court erred in granting Defendant's Motion for Summary Judgment.

---

## IV. Conclusion

The judgment of the trial court is hereby reversed and this case is remanded for trial. Costs of this appeal are taxed to the Defendant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

11